IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| PANAPRINT, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:22-cv-374 (MTT) |
| | ) |
| MIDDLESEX INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

# ORDER

Plaintiff Panaprint, Inc. ("Panaprint") filed this action against defendant Middlesex Insurance Company ("Middlesex") claiming that Panaprint is entitled to recover insurance proceeds from Middlesex for alleged property damage resulting from hailstorms in 2019 and 2021 (the "Losses"). Doc. 1. Middlesex moved for summary judgment on both Losses. Doc. 21. At the motion hearing, the Court granted summary judgment in favor of Middlesex on the 2019 Loss. Doc. 45. For the following reasons, Middlesex's motion for summary judgment on the 2021 Loss (Docs. 21; 46) is **DENIED**.

## I. BACKGROUND[1]

Middlesex issued a policy of insurance to Panaprint, which covered Panaprint's property located in Macon, Georgia, for the period of December 31, 2018, to December 31, 2019. Docs. 21-8 ¶ 1; 30-1 ¶ 1 at 1. Middlesex issued a second renewal policy to Panaprint, which covered the same property for the period of December 31, 2020, to

---

[1] Unless otherwise stated, these facts are undisputed and are viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

December 31, 2021.  Docs. 21-8 ¶ 2; 30-1 ¶ 2 at 2.  Relevant here, both Policies provide that Middlesex "will pay for direct physical loss of or damage to Covered Property."  Docs. 1-3 at 22; 1-4 at 47.  Under both Policies, hail damage constitutes "direct physical loss."  Docs. 30-1 ¶ 2 at 16; 36-1 ¶ 2.

In May 2021, Hailsolve, Inc. inspected Panaprint's property and found hail damage.  Docs. 21-8 ¶ 5; 30-1 ¶¶ 5 at 4, 8 at 17; 36-1 ¶ 8.  In June, Hailsolve conducted a more detailed inspection of the property to document hail damage on the facility's roof, HVAC units, and other areas of the Panaprint facility.  Docs. 30-1 ¶ 12 at 18; 36-1 ¶ 12 at 5.  After the second inspection, Panaprint submitted a claim to Middlesex under the Policy for purported damage to Panaprint's property from a hailstorm in 2019.  Docs. 21-8 ¶ 4; 30-1 ¶ 4 at 3.

Middlesex inspected the Panaprint facility in July 2021.  Docs. 23-5 at 46; 141.  Middlesex's professional engineer determined that there were spatter[2] marks from hail "indicative of a recent event" on the HVAC unit fins and the roof.  Docs. 49 at 6; 23-5 at 27.  Middlesex's engineer determined that "the largest impact marks at the facility were 1 inch in diameter and less than ½ inch deep."  Doc. 49 at 9.  Middlesex's engineer further determined that "the spray foam roof was damaged by the impact of hail," and "the appropriate repair of the spray foam roofing is to scarify the top ½ inch of foam, apply a ½ inch thick layer of new foam, and a new granulated coating."  Id. at 8-9.  However, in September 2021, Middlesex denied coverage for the 2019 Loss because of Panaprint's delay in notifying Middlesex of the Loss.  Docs. 21-8 ¶ 7; 30-1 ¶ 7 at 6.

---

[2] "Spatter," also known as "splatter," is "the removal of oxidation, fungus, etc., from exterior objects whether accompanied by damage or not."  Doc. 19-2 at 5-6.  "Hail spatter is a temporary record of recent hail activity … [and] is typically no longer visible within a year or two."  Id.

Meanwhile, Hailsolve retained professional engineer Mike Thompson to inspect the property and investigate the 2019 Loss. Docs. 30-1 ¶ 18 at 19; 36-1 ¶ 18. In December 2021, Thompson concluded that a more recent hailstorm had also caused damage to the Panaprint facility.[3] Docs. 21-8 ¶¶ 9-10; 30-1 ¶¶ 9-10 at 7. Specifically, Thompson observed "[s]ome of the hail damage on the roof was approximately 1 [inch] or larger [and] was not accompanied by any spatter." Doc. 19-2 at 8. Conversely, "[s]patter was found on HVAC units, metal panel wall coverings …, and the SPF roof system that were consistent with a hail size of ½ [inch] to 1 [inch]." *Id*. at 9. Therefore, Thompson determined that the larger hail damage, approximately 1 inch in diameter, was older, whereas the smaller hail damage derived from the more recent hailstorm. Doc. 19-2 at 9. On December 22, 2021, Panaprint submitted a second claim to Middlesex for hail damage allegedly occurring in May 2021. *Id*.

In the end, Panaprint's experts determined the following:

- The most likely date of the more recent hailstorm (the 2021 Loss) was May 4, 2021. Docs. 21-8 ¶ 12; 30-1 ¶ 12 at 9-10.

- The spray foam roof at the Panaprint facility would need to be scarified, re-foamed, and recoated to properly repair the hail damage from the 2019 storm. Docs. 46 at 2-3; 30-1 ¶ 19 at 14.

- Similarly, the spray foam roof would need to be scarified, re-foamed, and recoated "as a result of the alleged hail activity in 2021." Docs. 21-8 ¶¶ 18-19; 30-1 ¶ 18-19 at 13-14, 46 at 2-3.

---

[3] Middlesex disputes the date Panaprint learned of the second loss, and whether Panaprint learned from Thompson or Hailsolve that the most likely date of the second loss was May 4, 2021. Doc. 36-1 ¶¶ 19, 21, 22.

Middlesex conducted a second inspection of Panaprint's property in January 2022.  Docs. 23-5 at 145; 37-1.  Middlesex determined that the 2021 hail event did not cause damage to the roof but agreed that the recent hail damaged the HVAC unit fins and vent caps.  Doc. 53 at 3.  Middlesex issued partial payment for the 2021 Loss for the cash value of damage to HVAC units on the property.  Docs. 30-1 ¶ 25 at 21, 36-1 ¶ 25; 53.

Panaprint filed this action against Middlesex on October 20, 2022, claiming that it is entitled to recover insurance proceeds for the 2019 and 2021 Losses.  Doc 1.  On January 11, 2024, Middlesex moved for summary judgment on both the 2019 Loss and 2021 Loss.  Doc. 21.  At a motion hearing on October 17, 2024, the Court granted summary judgment in favor of Middlesex on the 2019 Loss because Panaprint's lawsuit was filed after the expiration of the suit limitations period set forth in the Policy.  Doc. 45.  Before the Court now is Middlesex's motion for summary judgment on the 2021 Loss.  Docs. 21; 44.

## II. STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it 'must support its motion with credible evidence … that would entitle it to a directed verdict if not controverted at trial.'  In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party."  *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (quoting *Celotex Corp. v.*

-4-

*Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

In contrast, "[w]hen the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437 (quoting *Celotex Corp.*, 477 U.S. at 323). The moving party "simply may show ... that there is an absence of evidence to support the nonmoving party's case." *Id.* at 1438 (cleaned up). "Assuming the moving party has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of proof at trial." *Info. Sys. & Networks Corp.*, 281 F.3d at 1224-25 (citing *Celotex Corp.*, 477 U.S. at 324).[4]

In determining whether a genuine dispute of material fact exists, the Court "must avoid weighing conflicting evidence or making credibility determinations." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A

---

[4] Under Georgia law, the insured has the burden to prove that it complied with the conditions precedent under the policy, that the insurer waived its right to raise a certain defense, and that it suffered a loss covered by the policy. *Rsrv. Life Ins. Co. v. Davis*, 224 Ga. 665, 667, 164 S.E.2d 132, 133 (1968); *Wolverine Ins. Co. v. Sorrough*, 122 Ga. App. 556, 560, 177 S.E.2d 819, 822 (1970); *Metropolitan Life Ins. Co. v. Smith*, 48 Ga. App. 245, 247, 172 S.E. 654, 656 (1934); *see also* 17A Steven Plitt et. al., *Couch on Insurance* § 254:11 (3d ed. 2022). However, the insurer bears the burden to prove a policy exclusion, exception, or other affirmative defense applies. *Rsrv. Life Ins. Co. v. Ayers*, 217 Ga. 206, 213, 121 S.E.2d 649, 654 (1961); *see also* 17A Steven Plitt et. al., *Couch on Insurance* § 254:12 (3d ed. 2022). Thus, Panaprint has the burden to prove that it provided timely notice, that Middlesex waived its right to raise a notice defense, and that the Policy covers its claims. Middlesex has the burden to prove that any exclusion applies.

material fact is any fact relevant or necessary to the outcome of the suit, and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.  Furthermore, "[a]ll material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate."  M.D. Ga. L.R. 56.

### III.  DISCUSSION

Middlesex argues that Panaprint is not entitled to recover insurance proceeds from Middlesex for the 2021 Loss for three reasons: (1) Panaprint failed to comply with its contractual obligation to provide prompt notice of the claimed loss; (2) Panaprint failed to meet its burden to show that a covered cause of loss occurred on May 4, 2021; and (3) Panaprint failed to prove that Middlesex owed Panaprint any additional damages as a result of the 2021 Loss.  Docs. 21 at 12-18.

**A. Notice**

Middlesex argues Panaprint failed to provide "prompt" notice of the 2021 Loss.  Doc. 21-7 at 12-14.  According to Panaprint, notice was timely, or, at a minimum, there is a dispute over whether notice was timely.  Doc. 30 at 14.  Further, Panaprint argues that in any event, Middlesex waived its right to raise notice as a coverage defense.[5]  *Id*.

The Policy requires that in the event of loss or damage, the insured must: (a) "give [Middlesex] prompt notice of the loss or damage," including "a description of the property involved" and (b) "as soon as possible, give [Middlesex] a description of how,

---

[5] Panaprint has not moved for summary judgment on its arguments that notice was timely as a matter of law or that Middlesex waived its notice defense.

when and where the loss or damage occurred." Doc. 1-4 at 56-57. Neither "notice" nor "prompt" is defined in the Policy. Doc. 1-4.

### 1. Prompt notice

Middlesex argues that "[b]ecause the alleged date of loss for this claim is May 4, 2021, and [Panaprint] did not notify Middlesex of its claim for this loss until December 22, 2021, seven and one-half (7.5) months later …, Middlesex is entitled to summary judgment." Doc. 21-7 at 12.

Insurance policy requirements that an insured give appropriate notice of occurrences are conditions precedent to coverage. *Plantation Pipe Line Co. v. Royal Indem. Co.*, 245 Ga. App. 23, 28, 537 S.E.2d 165, 169 (2000). The purpose of a notice requirement is to "enable an insurer to investigate promptly the facts surrounding the occurrence while they are still fresh and available, to prepare for a defense of the action, and, in a proper case, to determine the feasibility of settlement of the claim." *Richmond v. Georgia Farm Bureau Mutual Insurance Co.*, 140 Ga. App. 215, 231 S.E.2d 245, 250 (1976) (internal citations omitted). "[W]hen the insured unreasonably fails to timely comply with the notice requirement, the insurer is not obligated to provide a defense or coverage." *Forshee v. Emps. Mut. Cas. Co.*, 309 Ga. App. 621, 623, 711 S.E.2d 28, 31 (2011). Finally, there is no requirement that an insurer must show it was prejudiced from an insured's failure to give timely notice. *Caldwell v. State Farm Fire & Cas. Ins. Co.*, 192 Ga. App. 419, 420, 385 S.E.2d 97, 99 (1989); *Se. Express Sys., Inc. v. S. Guar. Ins. Co. of Ga.*, 224 Ga. App. 697, 701, 482 S.E.2d 433, 436 (1997).

The Policy provides:

**2. Duties In The Event Of Loss Or Damage**

a. You must see that the following are done in the event of loss or damage to Covered Property:

…

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

Doc. 1-4 at 56-57.  Middlesex argues that "[b]ecause the alleged date of loss for this claim is May 4, 2021, and [Panaprint] did not notify Middlesex of its claim for this loss until December 22, 2021, seven and one-half (7.5) months later …, Middlesex is entitled to summary judgment."  Doc. 21-7 at 12.  Specifically, Middlesex contends that Panaprint should have known about the possibility of a claim when Hailsolve inspected the property for hail damage in June 2021, about one month after the hail activity occurred, thus triggering Panaprint's obligation to provide notice.  *Id.* at 12-13.

Middlesex fails to recognize that this line of reasoning applies, more consequentially, to Middlesex.  Middlesex inspected the insured property in July 2021 and examined the roof for hail damage.  Docs. 23-5 at 46; 141.  Although this inspection was prompted by Panaprint's claim for the 2019 Loss, the fact remains that Middlesex investigated the hail damage which formed the basis of the claim for the 2021 Loss shortly after the 2021 Loss occurred.[6]  Middlesex observed, in its own words, "relatively fresh" … "spatter marks, which is indicative of a recent event."  Docs. 23-5 at 101:20-

---

[6] Middlesex's corporate witness testified as follows:
Q: Was there anything that impaired your ability, plus was there anything that impaired Middlesex's ability to investigate this claim, the May 4th claim?
A: I would say no because we were inadvertently on site before this claim was even made, looking at these damages, the claim damages.
Doc. 23-5 at 135:3-14.

102:5; 141:16. Thus, Middlesex knew about the second hailstorm and investigated the damage caused by that storm. *See Stonewall Ins. Co. v. Farone*, 129 Ga. App. 471, 474, 199 S.E.2d 852, 855 (1973) ("[I]t makes no difference who gives the notice, so long as a reasonable and timely notice is given [to] the company and it has actual knowledge of the pendency of a claim or suit.").

On these facts, a reasonable jury could conclude that Middlesex had prompt notice of the 2021 Loss.

*2. Waiver*

Panaprint argues that even if Panaprint failed to comply with the Policy's notice requirement, Middlesex waived its right to raise a notice defense by issuing partial payment for the 2021 Loss. Doc. 34 at 7-11. Clearly, facts support this argument.

In Georgia, "an insurer may waive any provision in an insurance policy inserted for its benefit, and may waive any condition or limitation in the policy upon which it could otherwise rely." *Mock v. Cent. Mut. Ins. Co.*, 158 F. Supp. 3d 1332, 1345 (S.D. Ga. 2016) (quoting *Sargent v. Allstate Ins. Co.,* 303 S.E.2d 43, 46 (Ga. Ct. App. 1983) (internal citations and quotation marks omitted). Requirements for timely notice are policy defenses and may be waived. *See Century Communities of Ga., LLC v. Selective Way Ins. Co.*, No. 19-14697, 2023 U.S. App. LEXIS 4645 at *9, 2023 WL 2237303 (11th Cir. Feb. 27, 2023). "Waiver … 'may be inferred from actions, conduct, or a course of dealing.'" *Thompson v. State Farm Fire & Cas. Co.*, 264 F. Supp. 3d 1302, 1320 (M.D. Ga. 2017) (quoting *Forsyth Cty. v. Waterscape Servs., LLC*, 694 S.E.2d 102, 109 (Ga. Ct. App. 2010)). Specifically, "[p]ayment by the insurer with knowledge of the pertinent circumstances giving it a policy defense waives its right to rely thereon." *Mock v. Cent. Mut. Ins. Co.*, 158 F. Supp. 3d 1332, 1345 (S.D. Ga. 2016)

(quoting *Sargent v. Allstate Ins. Co.,* 303 S.E.2d 43, 46 (Ga. Ct. App. 1983).  Here, Middlesex issued partial payment to Panaprint for the 2021 Loss despite having knowledge of the circumstances surrounding notice.  Docs. 30-1 ¶ 25 at 21, 36-1 ¶ 25; 23-5 at 145.

Thus, these facts would allow a reasonable jury to conclude that Middlesex waived its right to raise its notice defense.

**B. Coverage**

Middlesex argues that Panaprint has "failed to meet its burden to show that a covered loss occurred on May 4, 2021, or at any other time in 2020 or 2021, which would trigger coverage under the first or second renewal policies."  Doc. 21-7 at 14.  Initially, Middlesex argued that Panaprint could not rely on their experts' determination that hail damage occurred on May 4, 2021, because they were not qualified to give meteorological opinions and because no weather reports confirmed that hail fell on that date.  *Id.* at 14-15.  This argument presumed that expert meteorological testimony was necessary to prove the existence and estimated date of hail damage.[7]  Doc. 21-7 at 15.  In denying Middlesex's *Daubert* motions at the hearing on October 17, 2024, the Court rejected this presumption, noting that Middlesex's expert, like Panaprint's experts, found evidence of recent hail activity without resort to expert meteorological opinions.[8]  Docs. 19; 20; 45.

---

[7] The argument also presumed that Panaprint's experts rendered expert meteorological opinions.  That was another incorrect presumption by Middlesex.  Doc. 45.

[8] Middlesex's corporate witness testified as follows:
Q: … you don't dispute that hail fell on that day [May 4, 2021], do you?
A: We do not because there -- we were able to see spatter marks, which is indicative of a recent event.  We don't know the exact date that that happened, but we know that the spatter is there, so it speaks for itself.
Doc. 23-5 at 101:20-102:5.

Since the motion hearing, Middlesex has wisely shifted its focus away from disputing whether hail fell during the 2021 policy year.  Doc. 46.  Middlesex now contends Panaprint cannot establish a "direct physical loss" as defined by Georgia law.  *Id*. at 5.  The Policy provides that Middlesex "will pay for direct physical loss of or damage to Covered Property."  Doc. 1-4 at 47.  Under the Policy, hail damage constitutes "direct physical loss."  Docs. 30-1 ¶ 2 at 16; 36-1 ¶ 2.  "Direct physical loss" is not defined in the Policy.  Doc. 1-4.

Middlesex maintains that "[u]nder Georgia law, coverage under an insurance policy is predicated 'upon a change in the insured property resulting from an external event rendering the insured property, initially in a satisfactory condition, unsatisfactory.'"  Doc. 46 at 5 (quoting *AFLAC Inc. v. Chubb & Sons, Inc.*, 260 Ga. App. 306, 308, 581 S.E.2d 317, 319 (2003)).  Middlesex insists that Georgia law provides that "direct physical loss or damage" must *cause* the insured property "to become unsatisfactory for future use or requiring that repairs be made to make it so."  *Id*. (quoting *AFLAC*, 260 Ga. App. at 308, 581 S.E.2d at 319).  Further, Middlesex appears to argue that because the roof had been damaged by hail from the 2019 storm, the roof was not "satisfactory" and therefore the 2021 hail damage did not *cause* the roof to become "unsatisfactory" for future use.  *Id.* at 5-8.

Middlesex's argument mischaracterizes Georgia law on "direct physical loss or damage."  To constitute a "physical" loss, "the loss itself must be of or relating to things perceived through the senses as opposed to the mind; it must be tangible or concrete."  *Henry's La. Grill, Inc. v. Allied Ins. Co. of Am*., 35 F.4th 1318, 1320-21 (11th Cir. 2022).  Likewise, "[t]he word 'direct' as modifying the word 'physical' means only that the change in the insured property occurred by the action of the fortuitous event triggering

-11-

coverage." *AFLAC*, 260 Ga. App. at 308, 581 S.E.2d at 319. Therefore, "under Georgia law, 'direct physical loss or damage' requires (1) a tangible change to property (2) caused by an accident or other fortuitous event." *Sky Harbor Atlanta Ne., LLC v. Affiliated FM Ins. Co.,* No. 21-11329, 2024 U.S. App. LEXIS 24953 at *26, 2024 WL 4370727 (11th Cir. Oct. 2, 2024) (summarizing "each of the elements described in *AFLAC*").

Since *AFLAC* was decided, its definition of direct physical loss has been employed exclusively to assess whether there was a physical, tangible change to the insured property.[9] This was the question originally addressed by the *AFLAC* court,[10] and the Court sees no reason to assume that *AFLAC* requires an inquiry into "satisfactoriness" when it has no bearing on the issue of whether a physical, tangible change to the property occurred. Middlesex cites no case, and the Court has found none, that turns on the question of whether a property that undisputably underwent a physical, tangible change was "satisfactory" before the tangible change occurred. Rather, *AFLAC*'s holding has always meant, in essence, that for an insured to suffer

---

[9] *See Ne. Ga. Heart Ctr., P.C. v. Phoenix Ins. Co.*, No. 2:12-cv-00245-WCO, 2014 U.S. Dist. LEXIS 205607 at *14-*15, 2014 WL 12480022 ("What remains entirely absent from plaintiff's loss is some kind of physical effect on the covered property. As [the insured] acknowledges, the property did not break down or become damaged. Instead, [the insured was told] to stop using the generator as a precaution. …Plaintiff attempts to transform this ethereal loss into a direct physical loss."); *Sky Harbor Atlanta Ne.,* No. 21-11329, 2024 U.S. App. LEXIS 24953 at *33-36, 2024 WL 4370727 ("In short, under the Policy language [insuring against risks of "direct physical loss"], the analysis must focus on tangible change … during the Policy period."). There is a line of cases interpreting Georgia law with regard to whether financial losses, Covid-19 contamination, public health orders, and operational restrictions to reduce viral transmission during the Covid-19 pandemic caused "direct physical loss" to insured property. These cases consistently held, using *AFLAC*'s definition of "direct physical loss," that "direct physical loss" does not include loss-of-use damages when the property has not been physically impacted in some way. *See, e.g., Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*, 35 F.4th 1318, 1320-1321 (11th Cir. 2022); *Karmel Davis & Assocs. v. Hartford Fin. Servs. Grp.*, 515 F. Supp. 3d 1351, 1356-57 (N.D. Ga 2021); *Lemontree Acad. v. Utica Mut. Ins. Co.*, No. 3:20-CV-126 (CDL), 2021 U.S. Dist. LEXIS 92913 at *6-*7 (M.D. Ga Mar. 11, 2021); *AIKG, LLC v. Cincinnati Ins. Co.*, No. 1:20-CV-4051-TWT, 2021 U.S. Dist. LEXIS 168656 at *7, 2021 WL 4061542 (N.D. Ga Sept. 7, 2021). Finally, it likely is also significant that *AFLAC* involved a Y2K claim.

[10] 260 Ga. App. at 308, 581 S.E.2d at 319.

"direct physical loss," the physical state of the property must change. *See K D Unlimited, Inc. v. Owners Ins. Co.*, 522 F. Supp. 3d 1287, 1292 (N.D. Ga. 2021); *Sky Harbor Atlanta Ne.,* 2024 U.S. App. LEXIS 24953 at *27.

Here, all experts agree the 2021 hailstorm caused a tangible change to the property. The roof was insured, at the start of the Renewal Policy period in 2020, with preexisting hail damage dating back to 2019. Arguably, the roof Middlesex insured was in an "unsatisfactory" state. But the 2021 hailstorm, according to Panaprint's experts, made the roof damage worse. It made the roof *more unsatisfactory.* The Court rejects the notion that because Middlesex insured a roof that was already damaged by hail, new hail damage should not as a matter of law be covered as a "direct physical loss."

Panaprint's experts testified that the additional damage to the property after the 2021 hail event required, on its own, the scarification, re-foaming, and recoating of the roof.[11] *See* Docs. 21-8 ¶¶ 18-19; 30-1 ¶ 18-19 at 13-14, 46 at 2-3. Middlesex disagrees.[12] Clearly, the question of whether a direct physical loss occurred is one for a jury.

**C. Damages**

In a related argument, Middlesex contends that Panaprint cannot prove its damages because the scope of repairs before the 2021 Loss is the same as the scope of repairs after the 2021 Loss. Doc. 21-7 at 16. Further, Middlesex maintains that

---

[11] *See* Docs. 30-3 ¶ 27 ("I will submit that the damage resulting from either Loss, alone, requires the repair methodology of scarifying and recoating the roof at the Panaprint Facility."); 30-4 ¶ 26 ("even if the March 3, 2019 hailstorm had not occurred, the extent of the damage caused by the May 4, 2021 hailstorm would necessitate the scarification, re-foaming, and re-coating of the roof at the Panaprint Property.").

[12] Docs. 53; 23-5 at 142:17-24 ("[Y]ou can look at the damage and see that's clearly not recent. And you can see that the spatter clearly didn't damage it. And I say that because out of the thousands and thousands of spatter marks on that roof, there was … less than 10 instances of that occurrence.").

Panaprint has failed to quantify any additional damage that resulted from hail activity in 2021.  *Id*.

To recover for a breach of contract, "[t]he burden is on the plaintiff to show both the breach and the damage, and this must be done by evidence which will furnish the jury data sufficient to enable them to estimate with reasonable certainty the amount of damages."  *ISS Int'l Serv. Sys. v. Widmer*, 264 Ga. App. 55, 63, 589 S.E.2d 820, 826 (2003) (citations omitted).  The Court agrees with Middlesex that for Panaprint to prove its damages with reasonable certainty at trial, Panaprint will need to quantify the additional damage resulting from hail activity in 2021.  For the purposes of summary judgment, however, Panaprint has raised a question of fact as to whether the property sustained additional damage from the 2021 hail activity.  As described above, both Panaprint's experts have opined that the property sustained additional damage from the 2021 hail activity and that scarification, re-foaming, and recoating the roof would be required irrespective of any hail damage sustained in 2019.  This is sufficient to get Panaprint to a jury on the question of damages.

## IV. CONCLUSION

For the reasons discussed above, Panaprint's motion for summary judgment on the 2021 Loss (Docs. 21, 46) is **DENIED**.

**SO ORDERED**, this 11th day of January, 2025.

S/ Marc T. Treadwell<br>
MARC T. TREADWELL, JUDGE<br>
UNITED STATES DISTRICT COURT